UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DONALD JOSEPH GENNUSO | CIVIL ACTION NO. 6:15-CV-02378 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| APACHE CORPORATION, ET AL. | BY CONSENT OF THE PARTIES |

### MEMORANDUM RULING

Currently pending is defendant Apache Corporation's motion for summary judgment. (Rec. Doc. 71). The motion is opposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, this Court grants Apache's motion and dismisses the plaintiff's claims against Apache with prejudice.

### BACKGROUND

The following facts are undisputed. This case arises out of an incident that allegedly occurred in May 2015 aboard a fixed SPAR oil and gas production platform known as Devil's Tower, which is located on the Outer Continental Shelf off the coast of Louisiana. Devil's Tower has no means of propulsion and is connected to the seabed by a mooring system consisting of chains, cables, and piles or caissons embedded into the ocean floor. Defendant Williams Field Services, LLC is the owner of the Devil's Tower platform, and defendant Eni US Operating Co. Inc. was the

operator of Devil's Tower at all relevant times. Apache is the owner of a well that was tied into Devil's Tower by pipeline.

In July 2005, Apache and defendant Stella Maris, LLC entered into a Master Service Contract, under which Apache hired Stella Maris to perform certain work or render certain services as set forth in separate job orders. Under Section 7 of the contract, Stella Maris was designated as an independent contractor not subject to the control or direction of Apache. While Stella Maris controlled the manner and methods by which it performed its work under the contract, Apache was only interested in the compliance of the work with the job order.

In August 2012, Apache and Greene's Energy Group, the plaintiff's employer, entered into a Master Service Contract. Under Section 2 of the contract, Apache hired Greene's to perform certain work to support Apache's "onshore and offshore exploration and production business," as provided in subsequent job orders. Section 8 of the contract specified that Greene's "shall be, and perform at all times as, an independent contractor." Greene's was not subject to the control or direction of Apache as to the details of the work performed by Greene's. Apache was only interested in whether the work performed by Greene's complied with the job order.

In the spring of 2015, Apache hired Greene's to flush out the Bass Lite pipeline from the Devil's Tower platform and prepare it to be plugged and abandoned. It was

up to Greene's to determine what personnel and equipment were needed to do the job. Greene's was responsible for rigging up and rigging down its equipment under the supervision of a Greene's employee who directed the Greene's crew. Greene's sent a crew of five employees, including Mr. Gennuso, to Devil's Tower to perform the flushing operation. The crew's supervisor was a Greene's employee, Matthew Breaux, and Mr. Breaux had ultimate supervisory control over Mr. Gennuso's work.

The Greene's crew arrived at Devil's Tower on May 6, 2015. Utilizing the cranes aboard Devil's Tower, the Greene's equipment was offloaded, and the next day the crew rigged up. Mr. Gennuso claims that he was injured on May 7, 2015, as the crew was rigging up their equipment. Mr. Gennuso worked on the night shift. His supervisor on the night shift was Greene's employee Beau Cluse. Matt Breaux who was the overall supervisor of the Greene's employees, only worked the day shift. Stella Maris employee Brian Ray worked a swing shift, covering some part of both the day shift and the night shift.

Mr. Gennuso claims that, on his first evening shift while rigging up, he and Mr. Cluse were at a location on the platform where they were attempting to tie in their equipment to a "tree" so that chemicals could be pumped through the Bass Lite pipeline. The plan was for Mr. Gennuso to lift an L-shaped connecting joint of pipe called a "90," and for Mr. Cluse to screw a longer length of pipe into the 90. As Mr.

-3-

Gennuso lifted the 90, however, he claims that Mr. Cluse was not ready to screw the other pipe to it. The 90 slipped a little and Mr. Gennuso had to push harder to hold the 90 up longer than he expected. In the process of this task, he felt a pop in his back. Although he does not know how much the 90 weighed, Mr. Gennuso's contention is that the 90 was heavy and should have been lifted by a crane rather than manually.

It is undisputed that there were cranes aboard the platform available for use by the Greene's crew. However, other contractors aboard the platform were also utilizing the cranes as simultaneous operations ("SIMOPS") were ongoing. Therefore, if the crane was in use by some other contractor, the Greene's crew would have to simply wait on its availability. There is no evidence in this record that, while the 90 was being connected by the Greene's crew, the Greene's crew asked for and was refused access to a crane.

Apache did not have any employees on the platform at any time during the flushing project, and Apache did not exercise any control over the details of the work performed by Greene's. The crew from Greene's performed the work while Brian Ray, a Stella Maris employee, verified that the job was completed to the appropriate specifications. There is no evidence in the record that Apache directed the Greene's crew to move any 90 by hand, or that Apache was even aware that the operation was

being undertaken in that manner at the time. There is no evidence that anybody from Apache gave any instructions in rigging up or moving the equipment. In addition, there is no evidence in this record that Greene's was told by anyone with Apache that Greene's could not use the crane. On the contrary, the testimony submitted is consistent that Apache did not prevent the Greene's crew from using the crane at any time.

## ANALYSIS

### A. THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

demonstrate the absence of genuine issues of material fact.³ If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.⁴ All facts and inferences are construed in the light most favorable to the nonmoving party.⁵

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.⁶ The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.⁷

**B.    LOUISIANA LAW GOVERNS THE CLAIMS AGAINST APACHE**

Jurisdiction in this case is premised on the jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA").⁸ As set forth in this Court's memorandum

---

³   *Washburn v. Harvey*, 504 F.3d 505, 508 (5ᵗʰ Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

⁴   *Washburn v. Harvey*, 504 F.3d at 508.

⁵   *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

⁶   *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5ᵗʰ Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

⁷   *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5ᵗʰ Cir. 2005).

⁸   43 U.S.C. §1349.

ruling on the motion for summary judgment concerning the applicable substantive law, pursuant to OCSLA, the law of Louisiana, as the adjacent state, governs the plaintiff's claims against Apache as the controversy arises on a situs covered by the OCSLA, maritime law does not apply of its own force, and Louisiana law is not inconsistent with federal law.[9]

Under Louisiana law, a principal is not liable for the offenses of an independent contractor in performing its contractual duties unless the independent contractor is performing ultrahazardous activities, or if the principal exercises operational control over the work performed by the independent contractor.[10]

C. **THERE IS NO EVIDENCE THAT APACHE EXERCISED OPERATIONAL CONTROL OVER THE INDEPENDENT CONTRACTORS NOR WAS APACHE INDEPENDENTLY NEGLIGENT**

There is no allegation that any of the work being performed by Greene's was ultrahazardous; therefore, in order for Apache to be liable either for the allegedly negligent actions of Greene's or Stella Maris, the plaintiff must show that Apache exercised operational control over the work they performed. The deposition testimony is consistent that Apache did not exercise such control, and the contracts

---

[9] 43 U.S.C. 1333(a); *Union Texas Petroleum v. PLT Engineering, Inc.,* 895 F.2d 1043, 1047 (5th Cir. 1990).

[10] *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549-550 (5th Cir. 1987).

specifically indicate that Apache did not intend to do so. Therefore, assuming for the sake of argument that either Greene's or Stella Maris were negligent, the plaintiff has failed to meet his burden to show that a genuine issue of fact exists that there was a degree of control exercised by Apache such that Apache would be liable for that negligence.

The plaintiff contends in opposition that Apache had independent negligence that would render it liable to the plaintiff. Specifically, the plaintiff contends that Apache "knowingly plac[ed] plaintiff and his co-workers in a hazardous work environment [and] Apache's on site contract company man, Brian Ray, warned Apache that conditions aboard the Devil's Tower were chaotic." The plaintiff further contends that Apache "knew or should have known that Greene's would have limited access to the platform's cranes." These contentions have no merit.

There were no Apache employees on the platform at any time; therefore, there is no evidence that Apache had any knowledge of "dangers" faced by the plaintiff when the Greene's crew was rigging up its equipment. Rather, the uncontroverted evidence is that Apache was not there and did not prevent the Greene's crew from utilizing the crane at any time.

The plaintiff argues that Apache should have chosen another time for Greene's to flush the Bass Lite pipeline when the conditions aboard the Devil's Tower were

less crowded and that "Apache negligently placed the Greene's crew on the Devil's Tower in conditions Apache's management knew might not allow Greene's to safely perform their work." There is no competent evidence to support such an assertion. The undisputed facts are that this alleged accident occurred during the rigging up process before the job began, and the job proceeded until the line hydrated and the procedure could not be concluded. The Greene's crew then rigged down and left the platform. There is no evidence that conditions on the platform rendered the work done by the Greene's crew inherently unsafe.

Further, the assertion that a dedicated crane operator specifically for use by Greene's personnel was to be available is not supported by competent summary judgment evidence and ignores the reality of the work environment. The platform personnel included a crane operator who was available for use by all of the contractors. Greene's had access to the crane and its operator, but the practicality of SIMOPS was that Greene's may have had to wait its turn to use the crane if the crane was engaged in other operations. The decision to wait or not was not made or authorized by anyone with Apache, and there is no evidence that Apache had any knowledge of the conditions as they existed at the time of the plaintiff's accident.

The plaintiff has failed to meet his burden of showing that there was any duty owed to the plaintiff in the context of this case that Apache somehow breached.

Therefore, Apache is entitled to judgment as a matter of law and the plaintiff's claims against it will be dismissed with prejudice.

## CONCLUSION

The plaintiff was employed by an independent contractor of Apache. The company representative was also employed by an independent contractor of Apache. The evidence is uncontroverted that Apache had no control over the details of the work performed by either of them. As the work was not ultrahazardous, Apache is not liable for any alleged negligence by Greene's or Stella Maris.

There is no evidence that Apache had any knowledge of the decision not to wait to utilize the crane before manually lifting the pipe joints called 90s in the rigging up process. Likewise, there is no evidence that Apache in any way authorized or directed the Greene's crew not to utilize the crane or that Apache in any way prevented Greene's from utilizing the crane.

Therefore, the plaintiff failed to show that there is a genuine issue for trial concerning Apache's potential liability for the plaintiff's claimed accident and resulting injury. Accordingly,

IT IS ORDERED that Apache's motion for summary judgment (Rec. Doc. 71) is GRANTED, and the plaintiff's claims against Apache are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the oral argument on Apache's motion, which was previously scheduled for June 15, 2017, is CANCELED.

Signed at Lafayette, Louisiana on this 12th day of May 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE