UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DONALD JOSEPH GENNUSO        CIVIL ACTION NO. 6:15-CV-02378

VERSUS        MAGISTRATE JUDGE HANNA

APACHE CORPORATION, ET AL.        BY CONSENT OF THE PARTIES

## MEMORANDUM  RULING

Currently pending is defendant Siren Oilfield Services L.L.C.'s motion for summary judgment. (Rec. Doc. 69). Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, this Court grants Siren's motion and dismisses the plaintiff's claims against Siren with prejudice.

## BACKGROUND

The following facts are undisputed. This case arises out of an incident that allegedly occurred in May 2015 aboard a fixed SPAR oil and gas production platform known as Devil's Tower, which is located on the Outer Continental Shelf off the coast of Louisiana. Devil's Tower has no means of propulsion and is connected to the seabed by a mooring system consisting of chains, cables, and piles or caissons embedded into the ocean floor. Defendant Williams Field Services, LLC is the owner of the Devil's Tower platform, and defendant Eni US Operating Co. Inc. was the operator of Devil's Tower at all relevant times. Apache is the owner of a well that

was tied into Devil's Tower by pipeline. The well was in the process of undergoing plug and abandonment operations at the time of the plaintiff's alleged accident.

Siren initially contracted with Eni to act as operations coordinator for work on another well; however, Eni enlisted the assistance of a Siren employee, Jim Leger, to perform what was described as clerical work on Devil's Tower. Mr. Barry Soileau, who was a production manager for Eni, testified that Mr. Leger was to "act as liaison on the safety side between Eni and. . . the rig personnel, the construction personnel[,] and whatever other discipline was performing any activities out there *relative to work permits being issued and safety meetings and coordinating all of those disciplines and their JSA's. . . .*"[1] According to Mr. John Randall, the production supervisor for Eni who was the "ultimate work authority,"[2] Mr. Leger's responsibilities included preparing Unit Work Permits, collecting the Job Safety Analyses ("JSA") from the contractors that related to the permitted work, and then providing the JSA and Permit to Eni for approval.[3] Mr. Leger's job responsibilities did not include evaluating the

---

[1]     Rec. Doc. 69-9, p. 2. (emphasis added).

[2]     Rec. Doc 69-8 at 2.

[3]     Rec. Doc. 69-8, pp. 2-9.

safety aspects of a JSA nor did anyone with Siren have authority to approve or execute Eni work permits.[4]

In August 2012, Apache and Greene's Energy Group, the plaintiff's employer, entered into a Master Service Contract. Under Section 2 of the contract, Apache hired Greene's to perform certain work to support Apache's "onshore and offshore exploration and production business," as provided in subsequent job orders. Section 8 of the contract specified that Greene's "shall be, and perform at all times as, an independent contractor." Siren had no contractual relationship with Greene's.

In the spring of 2015, Apache hired Greene's to flush out the Bass Lite pipeline from the Devil's Tower platform and prepare it to be plugged and abandoned. It was up to Greene's to determine what personnel and equipment were needed to do the job. Greene's was responsible for rigging up and rigging down its equipment under the supervision of a Greene's employee who directed the Greene's crew. Greene's sent a crew of five employees, including Mr. Gennuso, to Devil's Tower to perform the flushing operation. The crew's supervisor was a Greene's employee, Matthew Breaux, and Mr. Breaux had ultimate supervisory control over Mr. Gennuso's work.

---

[4] 30 CFR § 250.1911(b)(2) and (3) indicate that the responsibility for creating and signing a JSA does not lie with Mr. Leger in his capacity on this job.

There is no evidence that Mr. Leger or any other Siren employee had the authority to direct the manner in which Greene's did its work.

The Greene's crew arrived at Devil's Tower on May 6, 2015. Their equipment was offloaded from the supply boat, and they began rigging up the next day. Mr. Gennuso claims that he was injured on May 7, 2015, as the crew was rigging up their equipment. It is undisputed that there were cranes aboard the platform available for use by the Greene's crew. However, other contractors aboard the platform were also utilizing the cranes as simultaneous operations ("SIMOPS") were ongoing. Therefore, if the crane was in use by some other contractor, the Greene's crew would have to simply wait on its availability.

Mr. Gennuso contends the Greene's crew was denied access to the cranes on the platform for the rigging up operations, and therefore, he and other members of the Greene's crew had to lift and carry pipe and equipment by hand. More particularly, Mr. Gennuso claims that, on his first evening shift while rigging up, he and Mr. Cluse were at a location on the platform where they were attempting to tie in their equipment to a "tree" so that chemicals could be pumped through the Bass Lite pipeline. The plan was for Mr. Gennuso to lift an L-shaped connecting joint of pipe called a "90," and for Mr. Cluse to screw a longer length of pipe into the 90. As Mr. Gennuso lifted the 90, however, he claims that Mr. Cluse was not ready to screw the

other pipe to it. The 90 slipped a little and Mr. Gennuso had to push harder to hold the 90 up longer than he expected. In the process of performing this task, he felt a pop in his back. Although he does not know how much the 90 weighed, Mr. Gennuso's contention is that the 90 was heavy and should have been lifted by a crane rather than manually.

There is no evidence that Mr. Gennuso or Mr. Cluse requested the use of a crane in connection with the work that they were doing on the evening of May 7, 2015. According to Mr. Breaux, the lead rigger was keeping track of who was using the cranes and when Greene's could use them.[5] The testimony is uncontradicted that Mr. Leger "was not one those supervisors that would have – whose job it would have been to coordinate access to the crane with any of those disciplines."[6] There is no evidence that Mr. Leger participated in, or was even aware of, any decisions not to wait for the crane which would have been available for Greene's use, at a later time. There is also no evidence that Mr. Leger received any communication from anyone with Greene's or Stella Maris regarding a need for priority access to the crane. Finally, there is no evidence that Mr. Leger or anyone employed by Siren had any

---

[5]      Rec. Doc. 69-6, p. 2.

[6]      Rec. Doc. 69-9, pp. 3-4.

knowledge of the operations being conducted in the location where the alleged accident occurred prior to its occurrence.

**APPLICABLE LAW AND ANALYSIS**

**A.    THE SUMMARY JUDGMENT STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[7]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[8]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[9]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the

---

[7]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[8]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[9]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

existence of a genuine issue of a material fact.[10]  All facts and inferences are

construed in the light most favorable to the nonmoving party.[11]

If the dispositive issue is one on which the nonmoving party will bear the

burden of proof at trial, the moving party may satisfy its burden by pointing out that

there is insufficient proof concerning an essential element of the nonmoving party's

claim.[12]  The motion should be granted if the nonmoving party cannot produce

evidence to support an essential element of its claim.[13]

## B.    LOUISIANA LAW GOVERNS THE CLAIMS AGAINST SIREN

Jurisdiction in this case is premised on the jurisdictional provision of the Outer

Continental Shelf Lands Act ("OCSLA").[14]  As set forth in this Court's memorandum

ruling on the motions for summary judgment concerning the applicable substantive

law, pursuant to OCSLA, the law of Louisiana, as the adjacent state, governs the

plaintiff's claims against Siren as the controversy arises on a situs covered by the

---

[10]      *Washburn v. Harvey*, 504 F.3d at 508.

[11]      *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[12]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[13]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[14]      43 U.S.C. §1349.

-7-

OCSLA, maritime law does not apply of its own force, and Louisiana law is not inconsistent with federal law.[15]

## C.   SIREN OWES NO LEGAL DUTY TO THE EMPLOYEES OF GREENE'S

Under Louisiana law, one element essential to the plaintiff's recovery in a negligence action is the existence of a legal duty owed to the plaintiff by the alleged tortfeasor.  "Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. . . [W]here the alleged wrongful conduct of the defendant is a failure to act or 'nonfeasance', courts have found it necessary for some definite relationship between the parties to exist, such that social policy justifies the imposition of a duty to act upon the defendant."[16] Whether a duty is owed is a question of law.[17]

The only case cited by the plaintiff in opposition to Siren's motion is *Parta v. Grand Isle Shipyard, Inc.*[18]  The plaintiff cites that case for the proposition that no independent contractor defense can exist without a contract between the parties.  In

---

[15]     43 U.S.C. 1333(a)*; Union Texas Petroleum v. PLT Engineering, Inc.,* 895 F.2d 1043, 1047 (5th Cir. 1990).

[16]     *Fox v. Board of Supervisors of La. State Univ.,* 576 So.2d 978, 981 (La. 1991) (citations omitted).

[17]     *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-CC-1095 (La. 03/10/06), 923 So.2d 627, 633.

[18]     No. 06-844, 2008 WL 5262728 (W.D. La. Dec. 17, 2008).

*Parta*, which applied the law applicable to claims under 33 U.S.C. 905(b), the court found that Hercules, a company having a contract with platform owner Chevron, did not owe a duty to the employee of a third party, with which it had no contract, to intervene in the decision of the plaintiff's employer to engage in what was contended to be an unsafe procedure. That factual scenario is the same as the one presented in this case.

The Greene's crew, with what appears to be the input/approval by Mr. Ray of Stella Maris, made a decision not to wait on the availability of the platform crane, but rather to proceed with rigging up their equipment by hand. Aside from the fact that there is no evidence in this case that Mr. Leger or any other Siren employee had any knowledge of that decision, *Parta* instructs that Siren was not required "to assess (and exercise authority over) the work [Apache] had hired [Greene's] and plaintiff to perform aboard the platform."

Consistent with the general maritime law set forth in *Parta,* Louisiana law imposes no affirmative duty to intervene in the unsafe acts of another absent some special relationship between the parties.[19] This is particularly so where there is no

---

[19]    *Strickland v. Ambassador Ins. Co.* 422 So.2d 1207, 1209 (La. App. 1st Cir. 1982) (duty only arises where special relationship exists such as "carrier and passenger; innkeeper and guest; shopkeeper and business visitor; jailer and prisoner; and school and pupil"); *In Re FEMA Trailer Formaldehyde MDL,* 838 F.Supp.2d 497, 506 (E.D. La. 2012) (no duty owed by FEMA contractor to plaintiffs who resided in emergency housing units to warn of formaldehyde risk).

contractual privity between the plaintiff and the alleged tortfeasor.[20]  The plaintiff argues that Siren acted as some type of "gatekeeper" apparently in an effort to establish a type of special relationship between Siren and Greene's employees. However, there is no evidence in this record to support such a proposition, and the mere relaying of information between various disciplines does not create such a relationship.

The plaintiff also argued that Siren was responsible for developing and implementing safe work practices to control the presence, entrance, and exit of contract employees, under 30 C.F.R. 250.1914(g), having assumed this duty by contracting with Eni.  In his deposition testimony, however, Mr. Randal explained that Eni retained its responsibilities under the federal regulations and did not delegate them to Siren.[21]  Therefore, the cited regulation does not impose a duty on Siren with regard to the activities of the Greene's crew.

Evidence was presented to show that Siren had no JSAs or unit work permits showing that the Greene's crew arrived on Devil's Tower and unloaded their

---

[20]     *Herrington v. BP Products North America, Inc.,* No. 02-2110, 2003 WL 21362267 at *2 (E.D. La. June 10, 2003) (safety man had no duty to intervene in unsafe operation by contractor who had no contractual relationship with plaintiff's employer); *Goodie v. Exxonmobile Oil Corp.,* No. 13-5228, 2014 WL 1764777, at *6 (E.D. La. May 2, 2014) (no duty owed by "safety advisor" to actively intervene in allegedly unsafe operations of plaintiff employed by another contractor of platform owner).

[21]     Rec. Doc. 69-8 at 2-3.

equipment onto the platform, and no complete unit work permit covering Apache's

derigging operation.[22] But there is no evidence that the absence of this paperwork or

Siren's alleged failure to complete this paperwork caused or contributed to the

plaintiff's accident in any way. Furthermore, the fact that Mr. Leger or Siren might

not have performed every task they were contractually obligated to perform for Eni

does not evidence the creation of a duty that Siren might have owed to the Greene's

employees or in any other way support the plaintiff's contention that Siren is liable

for his alleged accident and resulting injury.

## CONCLUSION

The Court finds that Siren has established the absence of any genuine issue of

material fact as to an element of the plaintiff's claim for which the plaintiff bears the

burden of proof. The plaintiff has not come forward with proof sufficient to create

a genuine issue as to whether Siren owed a duty to him; therefore, the plaintiff's

claims against Siren fail as a matter of law. Accordingly,

IT IS ORDERED that Siren's motion for summary judgment (Rec. Doc. 69) is

GRANTED, and the plaintiff's claims against Siren are DISMISSED WITH

PREJUDICE.

---

[22]     Rec. Doc. 87-1 at 36-38, 52; Rec. Doc.

IT IS FURTHER ORDERED that the oral argument on the motion, which was previously scheduled for June 15, 2017, is CANCELED.

Signed at Lafayette, Louisiana on this 12th day of May 2017.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE